## *In re* WIDENING OF FORT STREET, HONOLULU.

APPEAL FROM AWARD OF COMMISSIONERS.   BEFORE PRESTON, J.

### JANUARY, 1887.

Where a statute confers on the Government the right to take private property for public use, every form and particular required by such statute must be complied with.

The award of commissioners, as to assessments and damages for widening a street, set aside for failure to comply with the statute: it appearing that said commissioners were improperly appointed: that no computation of the expense of widening the street was furnished them: and that they failed to notify interested parties to appear and present their claims.

DECISION OF PRESTON, J. ON APPEAL OF H. BRADLEY.

This is one of six appeals brought against the awards of Commissioners for assessing compensation to be paid to the owners and occupiers of property taken by the Government for the purpose of widening Fort street, Honolulu, and to determine the amount of benefit accruing to each estate by reason of such widening.

The facts being substantially the same in all the cases, it was agreed that the matters of law involved in this case should first be determined, and that the decision therein should govern all.

In order to understand the nature of the appeal, it is necessary to consider the course of legislation on the subject.

Sections 184, 185, 186 and 187 of the Civil Code are as follows:

"Section 184. Upon the request of fifty or more polltaxpayers, of any district, to the Minister of the Interior, that a new road be opened, or that an old road be shut up in that district, said Minister may appoint a jury of twelve persons to decide on the propriety of the measure proposed, and their decision, when agreed to by at least nine of said jury, may be acted upon by the road supervisor of such district.

"Section 185. In laying out any new road or highway, respect shall be had to the private vested rights of property which any individual may have in the land over which said road or highway shall be intended to pass. It shall be the duty of the road supervisor, immediately after such new road or highway shall have been determined upon, to cause notices to be posted along the line of the same, advertising the fact, and calling upon all persons interested therein to bring forward their claims to the nearest Circuit Judge; and it shall be the duty of such Circuit Judge to forward a list of such claims to the Minister of the Interior.

"Section 186. Upon the receipt of such claims, the Minister of the Interior may appoint a commission of three disinterested persons to assess the value of the private property so required for the public use, and also the damages, if any, likely to be sustained by the owner, whose decision shall determine the price to be given by the Government for such private property; and said commission shall send a certified copy of their decision to the Minister of the Interior, and another to the party making the claim.

"Section 187. Upon the delivery of said decision to the owner of the land, the property assessed shall revert to

the Government for the public use intended, without further conveyance; and the holder of such decision shall present the same to the Minister of the Interior for adjustment pursuant to the provisions of the next succeeding section."

The law as it then stood made no provision for altering or widening roads or highways, and it would seem that, in the cases provided for, the Minister was not authorized to pay any claims until the amount had been ascertained by the Commissioners, and that he might issue one general commission to assess the amount payable to all the claimants.

In the year 1870 an Act was passed: "To provide for the assessment of a part of the expense of constructing roads upon estates benefited thereby."

Section 1 of this Act provides that: "Whenever a commission shall be appointed within the electoral districts of Honolulu and Hilo, pursuant to the provisions of the 186th Section of the Civil Code, to assess the value of private property required for public use, in the laying out of a new road or highway, the commission shall determine what estates are especially benefited by such road or highway, and the amount of special benefit accruing to each."

Section 2 provides that: "The commission shall award the proportion of the whole expense of laying out and constructing the proposed road or highway, which ought to be assessed upon estates benefited, and the proportion to be paid for from the public treasury."

Section 3 provides that: "The commission shall report, in writing, to the Minister of the Interior the whole amount which ought to be assessed upon estates benefited, and the amount of special benefit accruing to each estate; and thereupon the Minister shall cause to be computed the rateable proportion of cost to be borne by each estate, in excess of the assessed value of any portion of the same estate which may be required for the proposed highway."

The statute then provides for the filing of the certificate of computation with the Registrar of Conveyances, and makes the

amount due to the Government a charge upon the estate, and provides for service of a copy of the certificate upon the owner of the estate, and for a sale of the property upon default in payment.

This statute provides for an appeal to the Supreme Court by any person aggrieved, and the appeal is brought by virtue of this statute.

In 1872 the law was altered in some most essential particulars, and the mode of procedure substantially altered.

By this last-mentioned law, Sections 184, 185 and 186 of the Civil Code are amended to read as follows:

"Section 184. Upon the request of fifty or more tax-payers of any district to the Minister of the Interior that a new road, highway or street be opened; or that an old road, highway or street be shut up or widened or altered; or if it shall be made to appear to the Minister of the Interior in any other way that any road, highway or street should be opened, widened or otherwise altered, the said Minister of the Interior shall request any judge of a Court of Record to select a list of twenty-four names from among the legal voters of the district in which the improvement or alteration is contemplated, from which such judge shall direct the Marshal of the Kingdom or the Sheriff of the island in which the improvement is contemplated, to draw a jury of six persons to decide on the propriety of the measure proposed, and the decision of such jury, or a majority of them, shall be certified immediately to the Minister of the Interior, who is hereby authorized and empowered to take action in accordance with such decision of such jury.

"Section 185. In laying out, closing or widening any road or highway, respect shall be had to the private vested rights of property which any individual may have in the land affected by any such proposed work. It shall be the duty of the Road Supervisor, immediately after such proposed work shall be determined upon, to cause notices to be posted along the line of such proposed new road, street or highway proposed to be closed, opened or widened, or altered, advertising the fact and

calling upon all parties interested therein to bring forward their claims to the nearest Circuit Judge, Police or District Justice; and it shall be the duty of such Judge or Justice to forward a list of all such claims to the Minister of the Interior.

"Section 186.   Upon the receipt of such claims, if the Minister of the Interior and the several claimants cannot agree upon the amount to be paid to such claimants, the said Minister shall appoint three disinterested persons as commissioners, or may request any judge of a Court of Record to cause a jury to be summoned and drawn in like manner as in the first section provided (184), to assess the value of the private property, or such damage likely to be sustained by the owner or occupier of any land to be taken for the proposed improvement, whose decision, or the decision of a majority of them, shall determine the price to be given by the Government for such private property, or for such damages as the case may be, and such Commissioners or jury shall send a certified copy of their decision to the Minister of the Interior, and another to the claimant."

The law further provides that all the provisions of said law of 1870 shall apply to the widening or altering any road, etc., and that the jury shall have the same powers as the commissioners provided for in that act.

On the 22d of March, 1886, the Minister of the Interior, acting under the powers conferred upon him, addressed a request to the Chief Justice, stating that it had been made to appear to the Minister that Fort street, between King and Merchant streets, should be widened, and requiring the Chief Justice "to cause a jury to be selected in accordance with law to decide upon the advisability of the proposed improvements."

The Chief Justice thereupon issued an order to the Marshal to draw a jury as required, and directed the Marshal to certify the finding of the jury to the Minister of the Interior.

The Marshal drew the jury from the list of twenty-four voters selected by the Chief Justice, and attended with them on the 23d March to view the locality, and the jury having recommended the proposed alteration, the Marshal certified the same to the Minister of the Interior.

It was contended on behalf of the appellant that these proceedings were irregular on the grounds:

1. That there was nothing on the record to show what caused the Minister of the Interior to widen the street. If not upon a petition by fifty taxpayers, then it should appear on record in what other way it was made to appear to the Minister that the street required widening.

2. That the Marshal should not have certified the finding of the jury to the Minister, but the verdict should have been certified under the seal of the Court.

I am of opinion that these objections are not sound, and that up to this time all the proceedings were regular and in accordance with law.

With regard to all the subsequent proceedings taken, a careful consideration of the law and the various papers and documents put in evidence, lead me to the conclusion that the award of the commissioners cannot be sustained.

I will, therefore, set out the proceedings which I consider the law requires to be taken, and point out where, in my opinion, the law has not been observed.

After the certificate of the finding of the jury has been filed with the Minister and the work has been determined upon, it becomes the duty of the Road Supervisor to cause notices to be posted along the line of road, calling upon all parties interested to forward their claims, etc.

The Road Supervisor did post a notice purporting to be in conformity with the statute, but such notice, so far as is necessary to set it out, only notified "all owners of property to send in their claims," so that occupiers and lessees who are not within the term *owners* were not notified, as they would have been had all persons interested been notified as required by the statute.

In accordance with the notice given by the Road Supervisor, the appellant (Bradley) and three other owners of property, viz., W. E. Foster, another appellant, and Mrs. Lack and A. L. Smith filed their claims with the Police Justice, Bradley claim-

ing $60.00. These claims were forwarded by the Police Justice to the Minister of the Interior on the 27th March, 1886.

On the 30th March, the Minister of the Interior, purporting to act under the laws before mentioned, appointed R. F. Bickerton, M. P. Robinson and S. M. Damon a "special Board of Commissioners to consider the claims, and to assess the damage likely to be sustained by the owners and occupiers of land to be taken, and to determine what estates are especially benefited, and the amount of benefit accruing to each by reason of the widening of Fort street between Merchant and King streets."    *    *    * "To do and perform all the duties set forth in said laws and all other laws of this Kingdom which are applicable to such commission."

It was objected on behalf of the appellant that it did not appear from the record that the Minister of the Interior and the several claimants were unable to agree upon the amounts to be paid to the claimants.

By Section 186 of the Civil Code, before it was amended, it would seem that upon the receipt of the claims, the Minister had no discretion as to settling them, but that he was obliged to appoint a commission to ascertain the amount payable.

This was altered by the Act of 1872, amending the Section, and I am of opinion that by such amendment the Minister was precluded from issuing a commission, unless the Minister and the claimant had disagreed as to the amount payable, and that some endeavor should have been made by the Minister to adjust the amount, or notice given to the claimant that the Minister considered the amount claimed to be excessive.

An attempt was made at the trial to prove this by the evidence of Mr. Gulick (the Minister of the Interior at the time these proceedings were taken), who testified "after receiving the claims there was a disagreement between the Minister and the several claimants—Bradley's was greater than I thought to be just by myself."

On cross-examination the witness admitted that the conversations which he had with Bradley were on the street and after the notice of appeal was given.

Under these circumstances I am of opinion that the appoint-ment of the commission was invalid, and I might here rest my judgment.  But the other questions raised are so important to the public that I deem it best to deal with every point raised.

On the 31st March, the commission reported to the Minister and awarded for damages to the appellant "H. Bradley for 245 square feet @ $6, $1470."

The other claimants were also awarded damages at the rate of $4.50 per square foot.

The commissioners recommended that the expenses of alter-ing buildings should be paid by the Government.  The com-missioners also adjudged to be paid by the several properties therein mentioned, for betterments, the sum of $5 per foot front-age for owners, and $2.50 per foot for tenants.  Bradley's share amounted to $232.75.

The Minister of the Interior then computed the amounts pay-able to each claimant, and the amount payable by estates benefit-ed, the amount payable to claimants for damages being $2491.50, and the amount to be paid by the several owners and occupiers for benefits being $2847.15.

In assessing the various amounts, the commissioners did not see any of the parties interested, or take any evidence in support of the claims, but merely examined the properties and used their own judgments as to the amount of damage, etc.  This, I believe, had been the usual and customary course taken by com-missioners in like cases.

The commissioners did not forward to the claimants a copy of their award, and the first the claimants knew of it was by a receipt of a notice from the Minister, dated the 1st April, notifying the parties of the amounts receivable or payable by them.

The Minister filed his computation with the Registrar of Con-veyances, the effect of which, supposing the proceedings to have been valid, was to vest the several properties proposed to be taken in the Government without further conveyance.

It was objected in behalf of the appellants that the award

of the commissioners was premature in that no computation of the expense of widening the street and laying it out had been made, and that it did not appear that any such computation had been furnished the commissioners. (See law before set out.) It was admitted that no such computation had been made.

I have no hesitation in holding that those objections must be sustained. I cannot conceive that it was the intention of the Legislature that any person should be deprived of his property, or that his property should be charged with the payment of large sums of money for so-called benefits, without giving him an opportunity of being heard in support of his claim or against the charge assessed.

It was the duty of the commissioners, acting as they were to a certain extent in a judicial capacity, to appoint a time and place for hearing the parties interested; to hear such testimony as might be adduced. As to the computation of the costs to be assessed on estates benefited, it was absolutely necessary that the commissioners should have been furnished with a computation of the estimated cost of the work, as otherwise it was impossible for them to compute the amount "to be paid by the Public Treasury," which, indeed, the commissioners did not compute.

It appears to me that by the amendment of Section 186, the Legislature has rendered it impossible for the commissioners, or a jury appointed to assess damages sustained by parties whose property may be injured by the work, to assess the amount of benefits accruing to their estates (even supposing the law authorizes such assessment), but that in cases where it is thought proper that such assessment should be made, a separate commission should issue, but this is not a matter brought up by this appeal.

The Constitution provides that no person shall be deprived of * * * "property without due process of law," and it is undoubted law that when a statute confers upon the Government or other parties the right to take another's property for

public purposes, every form and particular required by such statute must be complied with.

If property could be taken under such a procedure as was used in this case, the Constitution would be violated in one of its essential parts.

My judgment is that all the proceedings after the filing the finding of the jury are null and void, and consequently the appeal is sustained.

If I had the power I would order the certificate of computation now on record to be cancelled, but I must leave the parties to take such steps for that purpose as they may be advised.

*W. A. Whiting & Cecil Brown,* for appellants.

*A. Rosa* (Deputy Attorney-General), for Government.

Honolulu, January 25th, 1887.